**Tim Volpert,** OSB No. 814074
Email: tim@timvolpertlaw.com
Tim Volpert PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (503) 703-9054

**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Attorneys for Plaintiffs**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **EVAN MARTIN, as personal representative of the estate of**, **LANE MARTIN, deceased,**<br><br>Plaintiffs,<br><br>vs.<br><br>**CITY OF PORTLAND, a municipal corporation, and GARY DORAN,**<br><br>Defendants. | Case No.: 3:19-cv-1647<br><br>**COMPLAINT**<br>**Civil Rights Violation**<br>**Excessive Force**<br>**(42 U.S.C. § 1983)**<br><br>**Disability Discrimination**<br>**(42 U.S.C. § 12131** *et seq*;<br>**29 U.S.C. § 701** *et seq*)<br><br>**Oregon Tort Claims Act**<br>**(Or. Rev. Stat. § 30.260** *et seq*)<br>**Wrongful Death**<br><br>**Jury Trial Demanded** |

Page 1 – COMPLAINT

Plaintiff Evan Martin, by and through his attorneys, hereby alleges that:

## NATURE OF ACTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12133, and Or. Rev. Stat. § 30.265 by Evan Martin (Plaintiff). Evan Martin is the appointed personal representative of the estate of Lane Martin. On July 30, 2019, Defendant Gary Doran, a police officer with the City of Portland, shot and killed Lane Martin because Lane was exhibiting symptoms of his mental illness. The acts and omissions of Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act, and state common law. As a result of Defendants' acts and omissions, Plaintiff suffered economic and noneconomic damages. Plaintiff is entitled to damages and an award of attorney's fees and costs.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' claims of violation of federal constitutional and statutory rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. § 1983 and 12133. This Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

3. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

## TORT CLAIM NOTICE

4. Notice of this claim is satisfied by the filing of this lawsuit pursuant to ORS 30.275(3)(c).

## PARTIES

5.  Lane Martin died intestate. Evan Martin is Lane Martin's brother. The Multnomah County Circuit Court appointed him as personal representative of the estate of Lane Martin on October 1, 2019. Evan Martin is a resident of the state of Nevada.

6.  Lane Martin was a resident of the state of Oregon at the time he was killed and all relevant times.

7.  At all material times, Gary Doran was employed as a law enforcement officer for the Portland Police Bureau ("PPB"), an entity of the City of Portland, Oregon acting under color of state law. He is sued in his individual capacity.

8.  At all material times the City of Portland was a political subdivision of the State of Oregon. As a local governmental entity, the City of Portland is a person under 42 U.S.C. § 1983 and a public entity under 42 U.S.C. § 12131(1). At all material times, the City of Portland employed Defendant Doran.

## GENERAL ALLEGATIONS

### Background

9.  In 2012, the United States Department of Justice ("DOJ") issued findings that the City of Portland's Police Bureau ("City") was engaging in "a pattern and practice of unnecessary or unreasonable force during interactions with people who have or are perceived to have mental illness." The DOJ further concluded that this pattern and practice of unconstitutional excessive force was directly related to the City's "deficiencies in policy, training, and supervision."

10. The investigation by DOJ was "prompted in part by the high number of officer involved shootings that involved people with mental illness." The DOJ found that, "In the last

three years, PPB officers have used deadly force 12 times, nine of which involved people affected by mental illness."

11. In the three years immediately preceding this lawsuit, PPB officers have used deadly force 18 times. At least six of those people were people affected by mental illness.

12. The DOJ observed a pattern where PPB officers responded to minor incidents or "welfare checks" and escalated the situation to end in a use of force against people with mental illness.

13. The DOJ filed a lawsuit against the City and entered into a settlement agreement requiring improvements in data collection, training, and oversight.

14. The data collected and published by PPB show that the rate of use of force incidents involving people with mental illness has remained widely disproportionate from 2014 to the present, ranging from 10 to 15% of all uses of force. Government estimates place the prevalence of serious mental illness in the general population at 3-5%. As noted in paragraph 11, 33% of the people shot by PPB in the past three years were people with serious mental illness. Year after year, "welfare check," "suspicious person," and "unwanted person" calls continue to lead to serious uses of force by PPB officers.

15. From 2012 through the present, the Portland Police Bureau has revised its use of force policies and trainings to emphasize de-escalation, in order to address the allegations of excessive use of force articulated in the DOJ lawsuit. In practice, however, the Portland Police Bureau does not effectively discipline officers who fail to de-escalate confrontations and does not effectively discipline officers who use excessive force.

16. Since 2004, the City has hired an external entity, the OIR Group, to audit and review its officer-involved shooting and deadly force incidents, to make recommendations with

the goal of improving outcomes, meaning reducing the risk of unnecessary or unconstitutional uses of force. The OIR group has made repeated observations and recommendations regarding the Portland Police Bureau's training, review of critical incidents, and accountability practices, noting many areas for improvement. For example, the OIR Group has repeatedly noted PPB's deficiencies in areas of training and accountability.

17. Despite the fact that the PPB has responded to every single recommendation made by the OIR Group by agreeing to almost all of the OIR group's hundreds of recommendations over the years, nothing has actually changed with respect to the Bureau's practices in the use of deadly force.

### Lane Martin

18. On July 30, 2019, at approximately 4:20 p.m., PPB officers responded to a call of a man causing a disturbance and carrying a hatchet in an abandoned Safeway parking lot just north of Burnside Street on Northeast 122nd Avenue.

19. Officers encountered Lane Martin, acting erratic, paranoid, and illogical. More police officers were called to the scene carrying more weapons. Lane began walking south on Northeast 122nd Avenue. When he reached the intersection with Burnside, he stopped and a confrontation occurred with police officers. A PPB member shot Lane with a "less lethal" shotgun round, striking him. When he was struck, Lane dropped the hatchet and ran south.

20. Officer Doran and other PPB members chased Lane south on 122nd and west on Southeast Ash Street. Lane then ran into the courtyard of the Ash Street Courtyard Apartments. He stopped and turned around. PPB members shouted at him, and Lane shouted back. Officer Doran opened fire, unleashing approximately twelve rounds at Lane, killing him.

21. At the time he was shot, Lane had dropped the only weapon police were aware of and was empty handed.

22. Officer Doran had no safe backdrop for the shooting, recklessly placing dozens of bystanders in danger.

23. At the time he was killed by Officer Doran, Lane Martin was in the midst of a mental health crisis. He was delusional and paranoid. PPB's response to these mental health symptoms exacerbated his paranoia and precipitated his flight.

24. Lane Martin lived his life with an infectious joy. He earned an associate degree from Portland Community College and was working on his bachelor's degree at the Portland State University College of Art. He loved life and wanted only to be able to share that love through his art. In turn, he was a beloved member of his family and of the Portland State University art community.

**FIRST CLAIM FOR RELIEF**
**(Excessive Force – Violation of Fourth and Fourteenth Amendments)**

**Count 1: Individual Liability of Gary Doran**

25. As alleged above, Defendant Doran's use of force was objectively unreasonable under the circumstances, constituted excessive force, and was an unreasonable and unjustifiable use of deadly force.

**Count 2: Municipal Liability – Custom and Practice of Excessive Force Against People Suffering From Mental Illness**

26. The City of Portland has a custom and practice of using excessive force against people experiencing symptoms of mental illness.

27.     Lane Martin was experiencing symptoms of mental illness at the time of his contact with PPB members.

28.     The City of Portland's failure to enforce policies related to de-escalation and informed interactions with people experiencing mental health crises was a percipient cause of Defendant Doran's constitutional violation.

### SECOND CLAIM FOR RELIEF
### (Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act)
### (Against the City of Portland Only)

29.     Lane Martin was a qualified individual with a disability because he suffered from a serious mental illness that was limiting one or more of his major life activities, had a record of such impairment, and/or was regarded as having such an impairment.

30.     The City of Portland receives federal funds within the meaning of 29 U.S.C. § 794(a).

31.     Defendant Gary Doran and other employees of the City of Portland failed to take non-reckless, reasonable, proper and accepted precautions and safeguards when detaining or taking into civil or criminal custody Lane Martin, a person who they knew or reasonably should have known suffered from a serious mental illness, and in fact escalated the situation precipitating the use of deadly force. In so doing, the City of Portland was deliberately indifferent to Lane's right to be free from discrimination by failing to make reasonable modifications to their policies, practices, and procedures, and failing to accommodate Lane's disability.

## THIRD CLAIM FOR RELIEF
### (Wrongful Death – Or. Rev. Stat. § 30.020 *et. seq.*)

**Count 1: Battery**

32.    Gary Doran's use of force against Lane Martin was intentional.

33.    Gary Doran's use of force against Lane Martin was excessive under the circumstances described above.

**Count 2: Negligence**

34.    In the ways described above, the City of Portland and Gary Doran were negligent.

35.    The City of Portland is responsible both for its own negligence in failing to enforce policies they know will lead to the use of excessive force and the negligence of its employees who actually inflicted deadly force against Lane Martin.

## DAMAGES

36.    As a direct and proximate result of the conduct of the Defendants, Plaintiffs suffered economic and noneconomic damages, including:

   a. Medical services, burial services, and memorial services;

   b. Lane Martin's loss of enjoyment of life;

   c. Compensation for Lane Martin's loss of his civil right to be free from the use of excessive force by law enforcement;

   d. Compensation for Lane Martin's loss of his right to be free from discrimination based upon his diability.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

A. Grant Plaintiff compensatory damages against Defendants in an amount to be determined at trial;

B. Award Plaintiff reasonable costs, expenses, and attorney's fees;

C. Grant Plaintiff such further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**DATED** this 14th day of October, 2019

> By: /s Jesse Merrithew
> **Jesse Merrithew**, OSB No. 074564
> **Tim Volpert**, OSB No. 814074
> **Attorneys for Plaintiff**