IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EVAN MARTIN, as personal representative of the estate of LANE MARTIN, deceased**,<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND, a municipal corporation, and GARY DORAN**,<br><br>Defendants. | Case No. 3:19-cv-1647-SI<br><br>**OPINION AND ORDER** |

Tim Volpert, TIM VOLPERT PC, 610 SW Alder Street, Suite 415, Portland, OR 97205; and Jesse Merrithew, LEVI MERRITHEW HORST PC, 610 SW Alder Street, Suite 415, Portland, OR 97205. Of Attorneys for Plaintiffs.

Ryan C. Bailey, Deputy City Attorney; Caroline Turco, Deputy City Attorney; and William W. Manlove, Senior Deputy City Attorney; PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Evan Martin is the personal representative of the estate of Mr. Lane Martin, deceased. The Court refers to Evan Martin as "Plaintiff" and to Lane Martin as "Mr. Martin." Plaintiff brings this lawsuit against the City of Portland ("City") and Portland Police Officer Gary Doran ("Officer Doran") (collectively, "Defendants") in connection with the death of Mr. Martin in July 2019 after he was shot and killed by Officer Doran.

PAGE 1 – OPINION AND ORDER

Plaintiff asserts three claims. First, under 42 U.S.C. § 1983, Plaintiff contends that both Defendants violated Mr. Martin's constitutional rights against excessive force under the Fourth and Fourteenth Amendments. Plaintiff alleges personal liability by Officer Doran and municipal liability against the City. Plaintiff alleges that the City has a custom and practice of using excessive force against people experiencing symptoms of mental illness. Second, under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, Plaintiff contends that the City was deliberately indifferent to Mr. Martin's right to be free from disability discrimination and failed to accommodate Mr. Martin's disability. Third, Plaintiff asserts a claim of wrongful death against both Defendants under the Oregon Tort Claims Act.

Defendants have filed motions under Rule 12(b)(6), Rule 12(e), and Rule 12(f) of the Federal Rules of Civil Procedure. The City has moved to dismiss Plaintiff's municipal liability claim under § 1983, both Defendants have moved to strike portions of Plaintiff's Complaint, and both Defendants have moved, in the alternative, for an order requiring Plaintiff to provide a more definite statement of his claims. Because Plaintiff's Complaint sufficiently alleges facts to state a claim against the City under § 1983, the Court denies the City's motion to dismiss. Because the allegations that the City moves to strike are neither immaterial nor impertinent to the claims alleged in this lawsuit, the Court denies Defendants' motion to strike. Further, because Plaintiff's Complaint is not unintelligible and the additional details that Defendants seek are available through discovery, the Court denies Defendants' alternative motion for a more definite statement. Finally, the Court does not believe that oral argument would be helpful in resolving the pending motions and, thus, denies Defendants' request for oral argument. *See* LR 7-1(d)(1).

**STANDARDS**

**A. Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

B.  **Motion to Strike**

The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). The disposition of a motion to strike is within the discretion of the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990). "Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (quotation marks and alterations omitted)).

Rule 12(f) also provides that pleadings that are "immaterial" or "impertinent" may be stricken by a court. An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984 F.2d at 1527 (quoting C. Wright, A. Miller, et al., 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2013)). "Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question." *Id.* Such pleadings are legally insufficient because they clearly lack merit "under any set of facts the defendant might allege." *Polk v. Legal Recovery Law Offices*, 291 F.R.D. 485, 489 (S.D. Cal. 2013) (citation and quotation marks omitted).

C.  **Motion for More Definite Statement**

A court may order a more definite statement if the pleading "is so vague or ambiguous that the [opposing] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A

Rule 12(e) motion for more definite statement is disfavored and is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response." *Barnes v. Olive*, 2015 WL 5813193, at *2 (D. Or. Sept. 30, 2015) (quoting *Adobe Sys. Inc. v. Software Speedy*, 2014 WL 7186682, at *5 (N.D. Cal. Dec. 16, 2014) (citation omitted)). Rule 12(e) is designed to strike at unintelligibility, rather than want of detail. *Barnes*, 2015 WL 5813193, at *2. "Rule 12(e) motions attack the intelligibility of the complaint, not the lack of detail, and are properly denied where the complaint notifies the defendant of the substance of the claims asserted." *Id.*, quoting *Holdner v. Coba*, 2010 WL 678112, at *1 (D. Or. Feb. 25, 2010) (internal quotation marks omitted)). Finally, when the detail sought is available through discovery, the motion should be denied. *Barnes*, 2015 WL 5813193, at *2; *Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 42 (D.D.C.2011) ("Courts are reluctant to compel a more definite statement pursuant to Rule 12(e), and to prevent Rule 12(e) from becoming a substitute for discovery, courts will generally deny a motion for a more definite statement where the information sought may be obtained in discovery") (internal quotation marks, brackets, and ellipsis omitted).

## BACKGROUND[1]

On July 30, 2019, at approximately 4:20 p.m., officers with the Portland Police Bureau ("PPB") responded to a call of a man causing a disturbance and carrying a hatchet in an abandoned Safeway parking lot. There, officers encountered Lane Martin, who was acting erratically and irrationally and appeared to be paranoid. Mr. Martin began walking south, and when he reached an intersection he stopped and police confronted him. A PPB officer shot Mr.

---

[1] The recited facts are taken from Plaintiff's Complaint, which, at this stage of the litigation, the Court must accept as true.

Martin with a non-lethal shotgun round, causing Mr. Martin to drop the hatchet he was holding and flee.

Officer Doran and others chased Mr. Martin until he entered the courtyard of the Ash Street Courtyard Apartments. Mr. Martin stopped and turned around. Officers shouted at Mr. Martin, who shouted back. Officer Doran opened fire, shooting approximately 12 rounds at Mr. Martin, killing him.

At the time of the shooting, Mr. Martin was empty-handed and had dropped the hatchet, the only weapon of which the officers were aware. Plaintiff alleges that Officer Doran had no safe backdrop for the shooting and recklessly put dozens of bystanders in danger. At the time of the shooting, Mr. Martin was enmeshed in a mental health crisis, and Plaintiff claims that PPB's response to Mr. Martin's behavior exacerbated his paranoia and induced his flight, ultimately leading to his death.

Plaintiff argues that PPB's response to Mr. Martin's mental health crisis must be viewed in the context of the City's history with excessive use of force by police officers on persons experiencing mental health crises. In 2012, the United States Department of Justice ("DOJ") issued findings that the City's Police Bureau was engaging in "a pattern and practice of unnecessary or unreasonable force during interactions with people who have or are perceived to have mental illness." Complaint, ¶ 9. The DOJ concluded that this pattern and practice of unconstitutional excessive force was directly related to the City's "deficiencies in policy, training, and supervision." *Id.*

The DOJ's investigation was "prompted in part by the high number of officer-involved shootings that involved people with mental illness." *Id.* at ¶ 10. The DOJ found that "[i]n the last

three years, PPB officers have used deadly force 12 times, nine of which involved people affected by mental illness." *Id.*

In the three years before the filing of this action, PPB officers have used deadly force and killed 18 people. *Id.* at ¶ 11. Plaintiff further alleges that at least six of those people suffered from mental illness. *Id.* Plaintiff also cites data collected and published by PPB showing that people with mental illness are disproportionately involved in police use-of-force cases. *Id.* at 14.

From 2012 to the present, PPB has revised its use-of-force policies and trainings to emphasize de-escalation. *Id.* at ¶ 15. Plaintiff alleges that in practice, however, PPB does not effectively discipline officers who fail to de-escalate or who use excessive force. *Id.* Plaintiff also alleges that the City has failed to implement and follow the recommendations of the OIR Group, an external entity hired to review the PPB's officer-involved shooting incidents and recommend changes to avoid unconstitutional uses of force. *Id.* at ¶ 16-17.[2]

## DISCUSSION

**A. Motion to Dismiss Plaintiff's *Monell* Claim**

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[2] In their reply, Defendants ask the Court to take judicial notice of the DOJ's 2019 Findings of Substantial Compliance, filed in connection with the Court's oversight of the Settlement Agreement entered in the case of *United States of America v. City of Portland*, Case No. 3:12-cv-02265-SI (D. Or.) ("*City of Portland* Lawsuit"). Because Plaintiff did not object, the Court accepts the request and will take the judicially noticed information into consideration in the pending motions.

42 U.S.C § 1983. "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation and quotation marks omitted). "[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A local governmental unit, however, may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "A county is subject to Section 1983 liability if its policies, whether set by the government's lawmakers or by those whose edicts or acts . . . may fairly be said to represent official policy, caused the particular constitutional violation at issue." *King v. Cty. of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018) (citation and quotation marks omitted). Thus, "[t]o [prevail on a claim against a municipal entity for a constitutional violation], a plaintiff must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc). Further, the Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality . . . has caused an employee to [violate the plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.

"In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell*, 436 U.S. at 694). "The [Supreme] Court has further required that the plaintiff demonstrate that the policy or custom of a municipality 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Castro*, 833 F.3d at 1060 (quoting *City of Canton*

*v. Harris*, 489 U.S. 378, 392 (1989)). The deliberate indifference standard for municipal liability under § 1983 is an objective inquiry. *Castro*, 833 F.3d at 1076 (overruling *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002)). Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).[3]

There is no heightened pleading standard in the Federal Rules of Civil Procedure with respect to the "policy or custom" requirement of demonstrating municipal liability. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-68 (1993). Before *Twombly* and *Iqbal*, the Ninth Circuit held that "a claim of municipal liability under [§] 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dep't.*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. Cty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986)). As discussed above, the Supreme Court's decisions in *Twombly* and *Iqbal* established a more demanding pleading standard. In *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012), the Ninth Circuit held that the *Starr* standard applied to pleading policy or custom for *Monell* claims against municipal entities.

---

[3] A plaintiff also may establish municipal, or *Monell*, liability by demonstrating that the alleged constitutional violation was caused by a failure adequately to train municipal employees. *See City of Canton, Ohio*, 489 U.S. at 388–91; *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016). The Court notes that in his Complaint, Plaintiff's only expressly alleges *Monell* liability based on a theory of "custom and practice." *See* Complaint, ¶ 26. Plaintiff, however, also explicitly alleged the City's "deficiencies in policy, training, and supervision." *See* Complaint, ¶ 9.

The City argues that the Court should dismiss Plaintiff's *Monell* claim under Rule 12(b)(6). The City contends that Plaintiff's entire *Monell* claim is found in paragraphs 26 to 28 of the Complaint. Those paragraphs read:

> **Count 2: Municipal Liability – Custom and Practice of Excessive Force Against People Suffering from Mental Illness**
>
> 26. The City of Portland has a custom and practice of using excessive force against people experiencing symptoms of mental illness.
>
> 27. Lane Martin was experiencing symptoms of mental illness at the time of his contact with PPB members.
>
> 28. The City of Portland's failure to enforce policies related to de-escalation and informed interactions with people experiencing mental health crises was a percipient cause of Defendant Doran's constitutional violation.

*See* Complaint at ¶¶ 26-28. The City argues that these paragraphs merely recite the elements of a *Monell* claim and thus do not meet the plausibility pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff responds that paragraphs 26 to 28 of the Complaint are not the entirety of his *Monell* claim allegations. Rather, argues Plaintiff, the factual support for that claim is found in the preceding paragraphs. In those paragraphs, Plaintiff alleges that the PPB has a history of employing unconstitutional excessive force in confrontations with mentally ill people, that the PPB has failed adequately to remedy the problem by disciplining officers who use excessive force, and that Officer Duran used excessive force when he killed Mr. Martin. Plaintiff also notes that the Complaint alleges that people with mental illness are disproportionately involved in excessive use-of-force incidents with PPB officers, which Plaintiff argues, further supports his allegation of a custom or practice. Specifically, in paragraph 9 of the Complaint, Plaintiff alleges:

> In 2012, the United States Department of Justice ("DOJ") issued findings that the City of Portland's Police Bureau ("City") was engaging in "a pattern and practice of unnecessary or unreasonable force during interactions with people who have or are perceived to have mental illness." The DOJ further concluded that this pattern of unconstitutional excessive force was directly related to the City's "deficiencies in policy, training, and supervision."

Complaint, ¶ 9.[4]

The City cites several cases explaining the significant burden that a plaintiff must meet to establish liability under *Monell*. The City, however, conflates a plaintiff's burden of proof at trial (or even to withstand summary judgment) with a plaintiff's burden adequately to plead a claim. Interpreting *Iqbal* in the context of a *Monell* claim, the Ninth Circuit held that

> to be entitled to the presumption of truth, allegations in a claim or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*AE ex rel. Hernandez*, 666 F.3d at 637 (citing *Starr*, 652 F.3d at 1216.)

The City notes that Plaintiff cited data showing that one-third of all use-of-force incidents with the PPB involved people with serious mental illness but faults Plaintiff for not alleging that any of those incidents amounted to an unconstitutional use of force. The City's suggestion that each incident complied with constitutional requirements may be plausible, but that possibility does not make *implausible* Plaintiff's conclusion that those statistics support an ongoing pattern of unconstitutional behavior. *See Starr*, 652 F.3d at 1216 ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that

---

[4] *See City of Portland* Lawsuit, *supra* n.2.

plaintiff's explanation is *im*plausible") (emphasis in original). Certainly, Plaintiff will need evidence to support its *Monell* claim at trial (and even to withstand a motion for summary judgment, if the City files one). But the City cannot avoid continuing the litigation at this stage merely by raising doubts about the persuasiveness of Plaintiff's eventual proof, so long as Plaintiff's allegations are plausible, which they are.

Plaintiff has satisfied the requirements of Rule 12(b)(6) by asserting plausible factual allegations that, if proven, would establish each of the elements of his *Monell* claim. Plaintiff alleges that the City has a history of using unconstitutional force on people experiencing mental health crises sufficient to constitute a custom or practice and that the City has not implemented adequate disciplinary policies to reduce or eliminate the occurrence of unconstitutional uses of force against such persons. Plaintiff also alleges that police responded to Mr. Martin's erratic behavior by shooting him with a "less lethal shotgun round," chasing him down the street, shouting at him, and ultimately shooting and killing him when he was unarmed. Accepting these factual allegations as true and drawing all reasonable inferences in favor of Plaintiff, as the Court must do at this stage of the lawsuit, the Court concludes that Plaintiff has adequately alleged that the City has the requisite custom or practice, that the City acted with deliberate indifference, and that the City's custom or practice and actions and omissions caused the death of Mr. Martin. The Court denies the City's motion to dismiss.

**B. Motion to Strike Portions of Plaintiff's Complaint**

Defendants move under Rule 12(f) to strike portions of the Complaint that refer to the 2012 report from the U.S. Department of Justice report and the OIR Group's recommendations as "immaterial and impertinent because they set forth distant historical facts that are too remote in time and have no causal connection to the alleged constitutional violation at issue." Specifically, Defendants move to strike from the Complaint paragraphs 9, 10, 12, and 13, the

first sentence of paragraph 15, and paragraphs 16 and 17. The City adds that these allegations are a distraction and risk unnecessary and unfair prejudice.

Defendants' motion to strike is unpersuasive. The allegations that Defendants ask the Court to strike ultimately may prove of limited evidentiary value or even inadmissible, but they are neither "immaterial" or "impertinent." To prevail on his *Monell* claim, Plaintiff must show the City had a custom or policy that amounted to deliberate indifference to Mr. Martin's constitutional rights. The portions of the Complaint related to the 2012 DOJ investigation and report are material and pertinent to Plaintiff's *Monell* claim because they tend to show the City had or has an unconstitutional custom or policy. The City's alleged failure to implement the recommendations of the OIR Group also would tend to show that the City acted with deliberate indifference to Mr. Martin's constitutional rights. That these allegations reference the state of the City's practices from several years before Mr. Martin's death and the fact that the U.S. Department of Justice may have concluded that the City is in substantial compliance with the Settlement Agreement may weaken the probative value of Plaintiff's evidence, but they do not render Plaintiff's factual allegations irrelevant. The Court denies Defendants' motion to strike.

**C. Alternative Motion to Make More Definite**

Defendants also move, in the alternative to their first two motions, for an order under Rule 12(e) of the Federal Rules of Civil Procedure requiring Plaintiff to make more definite the allegations in his Complaint. There is nothing in Plaintiff's Complaint that is so indefinite that Defendants cannot ascertain the nature of the claims being asserted. Further, Rule 12(e) is designed to strike at unintelligibility, rather than want of detail, and there is nothing unintelligible in Plaintiff's Complaint. Finally, to the extent that Defendants seek greater detail, that is available to them through discovery. The Court denies Defendants' alternative motion to make more definite.

## CONCLUSION

The Court DENIES Defendants' Rule 12 Partial Motion to Dismiss and Motion to Strike (ECF 8).

**IT IS SO ORDERED**.

DATED this 21st day of January, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
